(C.D. 3801)

NATIONAL POLYCHEMICALS, INC. *v.* UNITED STATES (J. J. GAVIN & Co., INC., a/c A & S CORPORATION, PARTY IN INTEREST)

United States Customs Court, First Division

(Decided April 23, 1969)

*Richard P. Crowley* and *Philip G. Kiely* for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Glenn E. Harris,* trial attorney), for the defendant.

*Joseph F. Donohue* for party in interest.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: The involved protest was filed by an American manufacturer of a chemical compound sometimes referred to as "dinitrosopentamethylenetetramine" (hereinafter referred to as "DNPT"). Concededly, the jurisdictional prerequisites specified in section 516(b) of the Tariff Act of 1930, as amended, relative to a protest by a domestic manufacturer, have been complied with.

The regional commissioner classified the merchandise in question under item 425.10 of the Tariff Schedules of the United States, at the rate of 10½ per centum ad valorem under the provision therein for "Cyanuric chloride, melamine, and other compounds containing a triazine ring". Plaintiff claims the merchandise properly dutiable under item 425.52 of said tariff schedules at the compound rate of duty of 3 cents per pound and 15 per centum ad valorem under the "basket" provision in said item for "other" nitrogenous compounds.

The record discloses that "DNPT" is used commercially as a blowing agent or "gas generator", i.e. to expand rubber or plastics into sponge or foam forms (R. 69).

Essentially, it is the position of the plaintiff that "DNPT" is not a nitrogenous compound "containing a triazine ring". In this connection, plaintiff maintains that any determination of whether "DNPT" does or does not contain a "triazine ring" must include official and recognized systems of nomenclature and structure for the compound in question as well as its use in trade. It is the position of the plaintiff that "DNPT" does not contain a triazine ring as defined by any officially recognized system of nomenclature or of structure and, further, that it is not known in commerce as a compound containing a triazine ring. Plaintiff further maintains that there are no common characteristics of nomenclature, structure, manufacture or use between "DNPT" and those compounds specifically named in item 425.10. It appears that a ring system or a "ring" describes a chemical compound in which the atoms are connected to each other in such a manner that the last atom attaches itself to the first, thereby making a "ring". (Brief of party in interest, page 7.) With respect to the provision for "other compounds containing a triazine ring", plaintiff contends that this refers to other compounds containing a triazine ring of the type exemplified by melamine and cyanuric chloride, that is *unsaturated* monocyclic six-membered ring composed of three carbon and three nitrogen atoms

(oral argument, page 6) ; that "DNPT" is *saturated*, that is, with no double bonds. In this connection, defendant's witness, Dr. Modest, hereinafter identified, on direct examination testified as follows:

Q. I note, Dr. Modest, that you have not included in the diagram of the three ring isomers any indications of double bonding. Would you please explain why you have not done so?—A. While it is true that the parent ring system of a nitroheterocycle is generally represented in the fully aromatic, or unsaturated state, my own definition of a nitrogen heterocyclic ring system is one that includes all of the atoms of that ring system in whatever state of hydrogenation.

Q. And what does hydrogenation mean?—A. It simply means the addition of hydrogen atoms to the fully unsaturated molecule, either partially or completely. If there is complete hydrogenation the ring system or molecule contains as many hydrogen atoms as it can, and it is then called perhydro, or, in the case of the six-membered ring system, hexahydro.

Q. How, then, in summation, do you define what is meant properly by a triazine ring?—A. I define a triazine ring as a six-membered heterocyclic ring system containing three nitrogen and three carbon atoms. [R. 87–88.]

Four witnesses were called to testify at the trial. Two of the witnesses were called by the plaintiff and one each by the defendant and party in interest.

Dr. Kurt L. Loening, plaintiff's first witness held B.S. and Ph. D. degrees in chemistry conferred by Ohio State University. He had never engaged in any independent research directly in triazine compounds, but had been employed from 1951 until 1959 as associate editor of the Chemical Abstracts Section of the American Chemical Society, as senior associate editor from 1959–1963, and from the latter date until the time of trial, as associate director and then director of the Nomenclature Section of the Chemical Abstract Services of the society. His duties in the above positions had been to index and edit "Chemical Abstracts", a publication covering the "world chemical literature", and had involved him in "solving nomenclature problems" (R. 10).

Mr. William P. ter Horst, plaintiff's second witness, was a graduate of the Federal Institute of Technology, Zurich, Switzerland, in chemical engineering. The record discloses that he had engaged in research in triazine compounds, was the author or coauthor of two scientific publications, and has had some 120 patents issued to him, mainly on rubber chemicals, agricultural chemicals, and polymers (R. 63). He testified that he was familiar with systems and nomenclature used in trade and commerce as regards melamine and cyanuric chloride, but that prior to his consulting services and testimony in the case at bar, he was only "vaguely" familiar with systems and nomenclature used in trade and commerce as regards "DNPT" (R. 64).

Dr. Edward Modest, called as an expert witness by the defendant, holds a bachelor and master's degree in chemistry from Harvard University, as well as a Ph. D. in organic chemistry from the same University. He is a member of various chemical societies and associations and is the author of a number of articles or books relating to the field of chemistry and various chemical compounds (defendant's exhibit A for identification, R. 76), one of which is a chapter on "S-Trianzines" in volume 7 of the series on "Heterocyclic Compounds" edited by Dr. Robert Elderfield. The witness stated that he had become particularly familiar with the chemical structure and nomenclature of "DNPT" by reason of his being called to testify in the present proceeding (R. 79).

Dr. Francis E. Condon, called as a witness by the party in interest, is the holder of A.B. and Ph. D. degrees in chemistry from Harvard University. It appears from the record that this witness was qualified by his general education in chemistry and by his study of literature concerning "DNPT" prior to the present action to describe the characteristics and properties of the triazine ring here under discussion. It was stipulated at the trial that the testimony of this witness particularly with respect to the properties and characteristics of the triazine ring, would be the same as that of the Government's witness, Dr. Modest (R. 120).

Plaintiff's exhibit 1 is a diagram of "S-Triazine, or also 1,3,5-Triazine" (R. 24). Plaintiff's exhibit 2 is a diagram of "DNPT" (R. 33). Plaintiff's exhibit 3 is a diagram of the chemical compound, melamine (R. 39). Plaintiff's exhibit 4 is a diagram of the chemical compound, cyanuric chloride (R. 41–43). Plaintiff's exhibit 5 is a diagram of a chemical compound allegedly indicating the presence of a triazine ring which is "unsaturated" (R. 44). Plaintiff's exhibit 6 is a page from a booklet entitled "Definitive Rules for Nomenclature of Organic Chemistry" received in evidence in connection with the application of so-called "Rule–B–1" of Chemical Abstracts (R. 126) to nitrogen rings containing nitrogen compounds (R. 127).

Defendant's exhibit B is a diagram which represents a three-dimensional molecular model of the compound DNPT which was built by Government's witness, Dr. Modest (R. 79–80). Defendant's collective exhibit C consists of two sheets of a diagram testified to by Dr. Modest as the structure of the "DNPT" molecule in a two-dimensional plane (R. 81–82). Other illustrative diagrams introduced by the defendant as indicating further the structure of "DNPT" as well as that of the "s-triazine" compound and other triazine compounds, were received in evidence as defendant's illustrative exhibits D, E, F, and G (R. 89–103).

Such reference to the testimony of the witnesses and to the exhibits received, will be hereinafter referred to as is deemed pertinent in the determination of the issue in this case.

Plaintiff's case is apparently based on the proposition that there is a system called the "Chemical Abstract Service", prepared by the American Chemical Society, which document names chemicals in a systematic manner "for the specific purpose of indexing them and making it easier to search in the chemical literature for those compounds * * * and to facilitate research" (oral argument, page 10–11), and that, since the name of "DNPT" does not include the term "triazine", this compound cannot, or should not, be included in the provision in item 425.10 of the tariff schedules for "cyanuric chloride, * * * and other compounds containing a triazine ring" as a six-membered monocyclic ring containing three carbon atoms and three nitrogen atoms in an "unsaturated" system.

As heretofore noted, there was received in evidence as plaintiff's exhibit 2, a diagram which plaintiff's witness, Dr. Loening testified represents the so-called structural formula of "DNPT". Dr. Loening testified that the "official Chemical Abstracts name" for the chemical compound identified in plaintiff's exhibit 2, is "3,7-dinitroso-1,3,5,7-tetraazabicyclo(3,3,1)nonane" (R. 32), and stated that by employing that official name for "DNPT", one can arrive at the structural formula as given in plaintiff's exhibit 2 for "DNPT" (R. 33). Dr. Loening further stated that the "common" name for the structural formula given in plaintiff's exhibit 2 is "dinitrosopentamethylenetetramine". Plaintiff's witness then stated that the "common" name of the official system of nomenclature for the chemical compound shown in plaintiff's exhibit 2, does not indicate that the compound contains a triazine ring (R. 33). Dr. Loening further testified that the "Official system of nomenclature of DNPT", as set forth in plaintiff's exhibit 2, does not "indicate the presence of a substituted triazine ring in the chemical compound" (R. 34). He stated that the chemical structure shown in plaintiff's exhibit 2 does not contain a "saturated" triazine ring, "as defined by the official Chemical Abstract System of nomenclature for this compound" (R. 34–35), that is, "it does not, according to the official rules of nomenclature" (R. 35).

Dr. Loening, after identifying the structural formula (plaintiff's exhibit 3) and systematic name for melamine, stated that it contains a triazine ring because "it has the structural units, as defined before, that nomenclature-wise constitute a triazine ring. That is a six-membered ring with three carbons and three nitrogens, and three double bonds" (R. 37). Likewise, he identified the structural formula (plaintiff's exhibit 4) and the "systematic name" for cyanuric chloride and stated that the "systematic" name for that compound indicates the

presence of a triazine ring and that this ring is "unsaturated" (R. 40–41).

Dr. Loening stated that on the basis of *nomenclature* there is a "parent derivative relationship" between the compounds "s-triazine", melamine, cyanuric chloride, and "2-chloro-4,6-bis (ethylamino) symmetrical triazine", based on their structures (R. 45–46). When asked whether such a relationship existed between the compound "s-triazine" and "DNPT", he stated that there was none *"on the basis of nomenclature"* (R. 46–47). However, when further asked if there was such a relationship *on the basis of structure*, Dr. Loening stated:

*I can only testify as to nomenclature* [R. 47, emphasis supplied].

On cross-examination, Dr. Loening testified that he himself had never engaged in any independent research directly in triazine compounds (R. 53). He then testified as follows:

Q. Did you intend to imply in your direct testimony that only the preferred name, or the name designated as the preferred one by the American Chemical Society in the Chemical Abstracts, would assist a chemist in reconstructing the structural formula of the compound of which it referred?—A. No, there are other names in addition to the preferred systematic name that can give you the correct structure of the compound.

Q. In other words, there are various alternative names which are possible in describing the structure and composition of a compound?—A. Yes.

Q. And this is so despite the system of systematic nomenclature which the American Chemical Society, I say, sponsors or superintends?—A. Yes. [R. 54.]

Plaintiff's witness further stated that there is no place in the literature of the Chemical Abstracts published by the American Chemical Society where the term "triazine ring" is directly defined (R. 54–55). The witness also agreed that occasionally there is doubt even in his mind as to the manner in which a chemical would be classified under the so-called "systematic" classification (R. 57).

Plaintiff's second witness, Mr. ter Horst, confirmed the testimony of plaintiff's previous witness, that the primary and essential characteristics of a chemical compound which contains a triazine ring, are that it has to be "a six-membered ring containing three nitrogen atoms, three carbon atoms and three double bonds" (R. 64). He stated that the compound represented in plaintiff's exhibit 1 was "symmetrical triazine" which contains a triazine ring as recognized in industry but that the compound represented in plaintiff's exhibit 2, namely "DNPT", does not contain a triazine ring as recognized in industry (R. 65); and that the compounds represented in plaintiff's exhibit 3 and 5, namely, melamine and cyanuric acid, respectively, do contain a triazine ring (R. 66–67). His further testimony was to the effect that

there were no similarities between the manufacture and uses of "DNPT" and the manufacture and uses of melamine and cyanuric chloride (R. 70).

On cross-examination, Mr. ter Horst acknowledged that the compounds in plaintiff's exhibits 1, 3, 4, and 5, described by plaintiff's witness Loening as the "systematic" names, are not generally bought and sold by their long chemical names, including the word "triazine" but rather are bought and sold by their trade or "trivial" names (R. 71–73).

Defendant's witness, Dr. Modest, testified that he first became familiar with "DNPT" while compiling references to it for his chapter on "S-Triazines" in the volume edited by Dr. Robert Elderfield, heretofore referred to, and further stated that he had become more familiar with the imported product by virtue of his engagement to testify in the present proceeding. The witness described defendant's exhibit B as a three-dimensional model of the "DNPT" molecule which he had constructed (R. 79). Further describing defendant's exhibit B, Dr. Modest stated:

> A. * * * In this model one has to realize that this is constructured in three dimensions rather than two. * * * The blue junctures are nitrogen atoms, four of them in the ring and two of them outside the ring, being part of the nitroso groups. The black junctures are carbon atoms. You can see that there is an alternating sequence of carbon and nitrogen atoms through the skeleton. These projections which are unmarked, are hydrogen atoms. And, by examining this structure in two dimensions at a time, you can clearly see two hexagons as part of the molecular structure of this model [R. 80].

Dr. Modest further testified that "DNPT" is known or can be described by various chemical names, which he listed on defendant's illustrative exhibit D and which are the following:

(1)  3,7-dinitroso-1,3,5,7-tetraazabicyclo (3,3,1) nonane  [Chemical Abstracts preferred name].

(2)  1,5-endomethylene-3,7-dinitroso - 1,3,5,7 - tetraazacyclooctane [Smolin & Rapoport].

(3)  Dinitrosopentamethylenetetramine.

(4)  DNPT.

(5)  OPEX [trade name].

(6)  5-nitroso-1,3-(N-Nitrosomethaniminomethano)-hexahydro-s-triazine [name devised by Dr. Modest]. [R. 84–86.]

In the above connection, Dr. Modest testified that the last name listed above, which includes the word triazine and which, as indicated he had devised, describes the compound with sufficient accuracy so that a competent chemist can construct a two-dimensional or three-dimensional representation of the compound (R.86). With regard to three triazine

ring systems, defendant's witness, as heretofore noted, stated that "my own definition of a nitrogen heterocyclic ring system is one that includes all of the atoms of that ring system in whatever state of hydrogeneration." He defined hydrogenation as "the addition of hydrogen atoms to the fully unsaturated molecule, either partially or completely." Dr. Modest defined a triazine ring as "a six-membered heterocyclic ring system containing three nitrogen and three carbon atoms (R.87–88). He stated that the term "reduced triazine ring compounds" is one which refers to triazine compounds which are "in some state of reduction or hydrogenation beyond the fully aromatic or fully unsaturated state" (R.89). He gave as an example of such a compound, "4,6-diamino-1, 2-dihydro-2, 2-dimethyl-1-phenyl-s-triazine", which name Dr. Modest testified was published by him in the Journal of Organic Chemistry, volume 21, 1956, which he states is representative of a series of related compounds, "all of which are triazines and, further, all of which are dihydrotriazines" (R.90). He further testified that "Chemical Abstracts has adopted the name which I originally gave to this compound and others like it, for indexing purposes" (R.90). Dr. Modest testified that a fully reduced triazine ring compound would, nevertheless, contain a triazine ring (R.92); that he would call the fully saturated triazine ring "hexahydro-s-triazine" and the partially reduced triazine ring structures either "dihydro" or "tetrahydro", depending upon the degree of saturation (R.96). While the witness agreed that the Chemical Abstracts System of nomenclature performs a useful service in attempting to systematize all chemical names, he added:

> * * * However, if one relies too much on systematic nomenclature, frequently, one cannot tell what kind of compound is under discussion, or what the structure is, or whether it contains a certain ring system, or a certain functional grouping [R.99].

and testified that in determining whether a particular compound contains a triazine ring as part of its structure, he would not "be completely ruled by the nomenclature which may be assigned to it by the Chemical Abstracts" (R.100–101). In this connection, Dr. Modest testified that even the aromatic or unsaturated s-triazines such as melamine and cyanuric chloride, differ widely from each other in chemical properties (R.101–102).

On cross-examination, Dr. Modest testified that in various articles which he had authored or jointly authored in the field of chemistry (defendant's exhibit A), none had been directed towards the systems of nomenclature in the classification of compounds (R. 103–104). Defendant's witness agreed that "DNPT" does not show an unsaturated structure in either of the three two-dimensional structural formulas for "DNPT" as indicated in defendant's exhibit C. He acknowledged that neither the Chemical Abstracts preferred name of "DNPT" nor

that volume edited by Smolin & Rapoport entitled "The Chemistry of Heterocyclic Compounds", contains the word "triazine" (R. 107–108). Dr. Modest reiterated that, in his opinion, a triazine ring compound encompasses "any state of hydrogenation", although when partially or fully reduced, the state of hydrogenation must be indicated by a prefix in combination such as "perhydro" or "tetrahydro" (R. 112–113). On redirect examination, Dr. Modest testified that the terms cyanuric chloride and melamine do not indicate the presence of a triazine ring in the structure of either compound, but that to an experienced chemist such terms would indicate that fact. The witness subsequently acknowledged that the "official systematic names" for melamine and cyanuric chloride indicate the presence of an unsaturated triazine ring in those compounds (R. 117).

Counsel for the plaintiff stipulated that the testimony of Dr. Condon, concerning the properties and characteristics of the triazine ring, would be the same as that of Dr. Modest. He agreed with the testimony of the Government's witness that even though the triazine ring in "DNPT" is "saturated", it is nevertheless a triazine ring as that term is used among chemists (R. 120–122). He agreed that the name proposed by Dr. Modest, other than the official or the systems nomenclature, described the compound "DNPT" with sufficient accuracy "to satisfy a well informed chemist" (R. 123–124).

The two witnesses called respectively by the Government and the party in interest, testified that "DNPT" contained a triazine ring (R. 88, R. 119). It does not appear from the record in this case that this testimony was ever directly contradicted. As heretofore indicated, plaintiff's exhibit 2 (R. 34–35) is the so-called structural formula for "DNPT". The exhibit in question indicates the elements, carbon, nitrogen, carbon, nitrogen, carbon, nitrogen, in succession, bearing out the testimony of the witnesses for the defendant and the party in interest that "DNPT" contains a triazine ring, satisfying what constitutes, in our opinion, a triazine ring, namely, consisting of three carbon atoms and three nitrogen atoms, as testified to by the said witnesses. On the other hand, while plaintiff's witness, Dr. Loening, stated that based on his knowledge and opinion as director of nomenclature and the nomenclature section of the Chemical Abstract Service, "DNPT" can not be named as containing a triazine ring by any official system of nomenclature, he then testified as follows:

> Q. In your opinion and based on your knowledge, is DNPT recognized by chemists or industry generally as containing a triazine ring?
>
>   *     *     *     *     *     *     *
>
> A. I think my answer would be involved partly with guess work here. With my orientation, no. [R. 35–36.]

The testimony in this case establishes that triazine rings exist in various forms. Dr. Loening, on cross-examination, testified that the Union of Pure and Applied Chemistry, one of the authorities in the determination of terminology relating to chemical compounds, identified the saturated triazine ring by the prefix "perhydro" and that Chemical Abstracts identified it as "hexahydro" (R. 59). It thus appears that the saturated form of triazine does exist and that it is identified in the technical literature by a prefix which distinguishes it from unsaturated or partly saturated forms.

At the trial, a number of references were made to the volume "S-Triazines and Derivatives" by Smolin and Rapoport, 1959, Interscience Publishers, Inc., New York. At pages 2 and 3 of the introduction to said volume (see also, appendix to brief of party in interest, exhibit IV, page 3), discussion is had concerning a number of triazine compounds. This authority indicates, in our opinion, that triazine compounds exist in numerous forms, and that the saturated ring is named and discussed therein. Noteworthy, is the statement at page 3 of the above publication that:

> In naming the perhydro-s-triazines, *a departure from Chemical Abstracts has been made* * * * . [Italics supplied.]

It accordingly appears that the contention of the plaintiff that "DNPT" is not properly dutiable as classified because it is not named as a triazine by chemical societies, is without merit. Further, as heretofore indicated, the testimony of Dr. Modest, which it appears was not disputed by either of the plaintiff's witnesses, was to the effect that even from the standpoint of "nomenclature" compounds are named as triazines by "Chemical Abstracts" even though they do not contain the fully unsaturated ring system (R. 89–91).

The parties in this case apparently agree that the ring structure which exists in cyanuric chloride (or 2,4,6-trichloro-s-triazine), in melamine (or 2,4,6-triamino-s-triazine), and in the compound s-triazine itself, constitutes a "triazine ring". Plaintiff, however, maintains that one of the essential prerequisites of the triazine ring is one which is found in the above three examples, that is, it must be fully "unsaturated" and contain three sets of "double bonds" connecting the nitrogen and carbon atoms within the ring. As heretofore noted, the principal method by which plaintiff has sought to support this contention is by establishing certain differences between the so-called "official nomenclature" of "Chemical Abstracts" with respect to the above chemical compounds on the one hand, and "DNPT" on the other. Plaintiff further refers to certain differences in chemical characteristics and derivation existing between the above groups of compounds and the imported product. The Government witness, Dr. Modest, testified, however, that even the aromatic or unsaturated s-triazines, such as melamine and cyanuric chloride, differ widely from each other

in chemical properties (R. 101–102). The only respect in which the relevant provision of the Tariff Schedules of the United States requires "DNPT" to be similar to melamine and cyanuric chloride, is in the particular named therein, i.e., in "containing a triazine ring" of three carbon and three nitrogen atoms, with no reference to the state of hydrogenation of the ring.

The legislative history of item 425.10 of the Tariff Schedules of the United States, under which the involved merchandise was classified shows, in our opinion, a congressional intent to include the imported merchandise, "DNPT" under said item for "Cyanuric chloride, melamine, and other compounds containing a triazine ring". The tariff schedules of 1963 were prepared by the Tariff Commission pursuant to direction in a joint congressional resolution. After conducting extensive investigations in the course of which the views of interested parties were heard, the Tariff Commission issued its reports on the subject matter reviewed by it. These reports were considered by the Committee on Ways and Means and the schedules were subsequently adopted by the Congress as submitted. In its Fifth Supplemental Report, Tariff Classification Study, May 16, 1963, the Tariff Commission with respect to item 425.10 in a footnote headed by the term "Explanation" stated:

> These changes made in the provisions of Part 2D with respect to nitrogenous compounds will, to the extent practicable continue the existing rate treatment. Shortening the superior heading to "nitrogenous compounds" does not change its scope in any way. Several groups of chemicals have been rearranged and described by structure or functional groups:  *For example, item 425.10 covers a variety of chemicals containing a triazine ring such as dinitrosopentamethylenetetramine* and the herbicide * * *. [Italics ours.]

It appears, therefore, that the adoption by Congress of the recommendation by the Tariff Commission as noted in the above report discloses a legislative intent to include specifically under said item 425.10 of the tariff schedules the imported "DNPT" as a compound "containing a triazine ring". Further, a significant factor in our present determination is the continuance by Congress of the same rate of duty of 10.5 per centum ad valorem in the aforesaid item of the tariff schedules as had been applied to chemical compounds under paragraph 5 of the tariff act prior to the adoption of the tariff schedules.

Item 425.10 of the Tariff Schedules of the United States, provides for cyanuric chloride, melamine, and "other compounds containing a triazine ring". Dr. Loening, plaintiffs witness, testified that cyanuric chloride and melamine were the "trivial" names for the products, and not the so-called "systematic" names that would describe the chemicals in the manner in which the Chemical Abstract System is said to

describe them. In our opinion, the testimony of Dr. Modest and Dr. Condon, whom the record discloses were well qualified experts in the field of organic chemistry, is to be accorded great weight in ascertaining the meaning of the term "triazine ring". The language in item 425.10, *supra*, refers to compounds "containing a triazine ring", and such provision is not restricted to the "unsaturated" triazine ring. Accordingly, "DNPT", although containing the "saturated" triazine ring, a fact established by the record, is one of the compounds provided for as containing a triazine ring in item 425.10 of the tariff schedules. In our opinion, if Congress intended that the provision for "other compounds containing a triazine ring" in said item 425.10 embraces only such as contain a triazine ring in the "unsaturated" form, it would have so provided, so that the pertinent provision would read "and other compounds containing an unsaturated triazine ring".

Summarily, the record herein establishes that "DNPT" contains a triazine ring notwithstanding the fact that the "rules" of "systematic nomenclature" of Chemical Abstracts see fit to prefer for the compound under consideration a name which does not contain the word "triazine" as part of it. Specifically, the record establishes that a triazine ring is any six-membered heterocyclic ring system containing, as does the compound at bar, three nitrogen and three carbon atoms, and that the state of hydrogenation of the ring system is not relevant to its identification or classification as a triazine ring. In passing, it may be observed that nowhere in "Chemical Abstracts" does it define what is a "triazine ring", nor does it state in what form, "saturated", "partly saturated" or "unsaturated", chemical compounds covered by item 425.10 of the Tariff Schedules of the United States should be in.

It is well established that the classification made by the classifying officer, in this case the regional commissioner at the port of New York, is presumptively correct, and the burden of proof to show that it is wrong is upon the importer. *United States* v. *Victoria Gin Co., Inc., et al.*, 48 CCPA 33, C.A.D. 759. In this case, the burden rested upon the plaintiff to prove that "DNPT" does not contain a triazine ring. On the basis of the record here presented, we are of opinion and hold that the plaintiff has failed in its burden of proof, and that the imported product is properly dutiable as classified. The protest in this case is overruled. Judgment will issue accordingly.